The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing parties have not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the modification of plaintiff's entitlement to temporary total disability benefits and defendant's entitlement to a credit for long-term disability.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Defendant-employer was an approved self-insured at all relevant times.
4. Plaintiff sustained an injury by accident on August 31, 1998. However, defendant does not stipulate to the nature of plaintiff's injuries as a result of this injury by accident. Plaintiff contends that his injuries are contusions and fracture/separation of the right collarbone, scrapes and contusions to the right leg and hand as a result of falling into an open manhole while on the job. Plaintiff further contends the injury to his right collarbone caused, aggravated and/or augmented the development of a cancerous bone tumor in his right collarbone.
6. Plaintiff is claiming temporary total disability compensation from February 3, 1999 through April 25, 1999, permanent and total disability compensation from May 10, 1999, and approval of medical treatment.
7. Plaintiff last worked for defendant-employer on May 9, 1999. He alleges he has not returned to work with any employer.
8. The issues to be determined are as follows:
 a) Did defendant fail to timely admit or deny this claim within 14 days of actual notice as required by G.S. §§ 97-18(b) and (c) such that defendant waived the right to contest liability on this claim, and/or is subject to sanctions under Commission Rule 802?
 b) Was defendant's denial of this claim without basis and grounded in unfounded, stubborn litigiousness such that defendant should be subject to attorney's fees pursuant to G.S. §§ 97-88.1 and/or sanctions under Commission Rule 802, where defendant has alleged in its Form 33R dated June 18, 1999 that, "the injury complained of did not arise out of or within the course and scope of employee's employment, the injury did not arise out of a compensable incident or accident and employee has not complied with the requirements of the workers' compensation act"?
c) What is plaintiff's average weekly wage?
 d) Did plaintiff suffer compensable periods of disability as a result of his injury by accident of August 31, 1998? If so, what, if any, benefits is plaintiff entitled to receive?
 e) Was defendant's refusal to pay temporary total disability compensation to plaintiff for the period of time he was written out of work by Dr. John Hayes for treatment of his fractured right collarbone grounded in stubborn litigiousness such that defendant should be subject to attorney's fees pursuant to G.S. §§ 97-88.1 and be subject to sanctions under Commission Rule 802?
9. The depositions and medical records of Drs. John T. Hayes, Robert Tucker and Nick George Chrysson are a part of the evidentiary record.
10. The Pretrial Agreement along with its exhibits and all stipulations are incorporated herein by reference
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a fifty-four year old male. Plaintiff had attended special education classes in school due to a significant learning disability. Plaintiff is a non-reader, his reading and spelling are at the kindergarten level, and his math level is at sixth grade. Plaintiff functions at the low average range.
2. Prior to working for defendant-employer, plaintiff had performed manual labor jobs. Plaintiff was strongest in mechanics, machine operation and outdoor jobs. Plaintiff's former employment included work as a concrete finisher and a wastewater pump mechanic.
3. Plaintiff began employment with defendant-employer as a wastewater pump mechanic in 1994 when defendant-employer merged its water and sewer system with the Town of Kernersville.
4. Plaintiff was required to use hand and power tools, pry bars, grease guns, hoists, jacks, ropes and mobile cranes to maintain, repair and replace pumping station equipment. He had to use access ladders to enter pump pits and wet wells, to work frequently in confined areas, remove grease and debris from wet well areas and manholes, remove and dump debris collected by bar screens, install portable discharge lines, and operate mobile diesel pumps and generators.
5. On August 31, 1998, plaintiff was called back to work because of an air release valve. When plaintiff arrived on site it was dark and the area was grown up with weeds and brush. While looking for the manhole, plaintiff fell into the manhole opening because the top had been removed and he did not see the opening. Plaintiff injured his right shoulder and collarbone, right ribs, right hand, right leg and right foot in the fall. He immediately reported the incident to his supervisor.
6. The next day plaintiff had significant pain in his right shoulder. His wife noticed a knot in the same area.
7. On September 1, 1998, plaintiff was treated at Prime Care where he was diagnosed with multiple contusions. He was restricted to no repetitive use of his right arm and shoulder. Plaintiff continued to perform his normal job duties.
8. Prior to this incident, plaintiff had no right shoulder problems.
9. On approximately September 9, 1998, plaintiff's pain in the right shoulder and clavicle area worsened. Plaintiff was referred to Dr. Howard Jones who found palpable swelling of the right sternoclavicular joint. X-rays revealed a probable dislocation of the right clavicle and plaintiff was restricted from using his right arm.
10. On October 13, 1998, Dr. Jones found that plaintiff had essentially complete interval resolution of his symptoms of right sternoclavicular joint pain; however, plaintiff continued to have an obviously enlarged sternoclavicular joint.
11. Plaintiff continued to have right shoulder difficulty including pain and the inability to use his arm to perform his job. On December 29, 1998, Dr. Jones reevaluated plaintiff who continued to have right sternoclavicular joint pain. Consequently, Dr. Jones referred plaintiff to Dr. Jerome Jennings who found that plaintiff had a symptomatic subluxation of the sternoclavicular joint. Dr. Jennings referred plaintiff to Dr. John Hayes.
12. On January 24, 1999, Dr. Hayes examined plaintiff and found that plaintiff had an unstable, painful sternoclavicular joint. A tomogram was performed, which showed an area of enlargement of the medial end of the right clavicle with mixed sclerosis and lucency. Furthermore, there was an area within the superior medial aspect of the right clavicle that was later determined to be a tumor referred to as an intraosseous chondrosarcoma. There was also an area of cortical disruption at the inferior medical margin of the right clavicle at the sternoclavicular joint. This was a fracture of the cortical shell of the right clavicle at the sternoclavicular joint, which occurred when plaintiff fell into the manhole.
13. As a result of this condition, which Dr. Hayes related back to the accident of August 31, 1998, he removed plaintiff from work as of February 2, 1999.
14. Dr. Hayes performed surgery on plaintiff on February 8, 1999, and found a solid cartilage tumor within the medial end of the clavicle and a fracture of the cortex of the right clavicle. According to Dr. Hayes, the fracture of the cortex of plaintiff's right clavicle was the result of the fall into the manhole of August 31, 1998. The trauma, as a result of the fall, to the right clavicle disrupted the cortex of the bone, which had previously confined the tumor inside of the bone. The trauma from the fall caused breaks in the cortex, which allowed the tumor to extend to adjacent tissues including the mediastinum. Dr. Tucker agreed with Dr. Hayes that trauma from the fall caused the fracture of plaintiff's right clavicle. Further, Dr. Tucker agreed with Dr. Hayes in that if the tumor extended beyond the cortex of the clavicle at the site of the fracture, then the fall had allowed the tumor to extend into the mediastinum. Another expert, Dr. Chrysson, gave conflicting opinions regarding the causal relationship between plaintiff's fall and plaintiff's condition as related to the tumor. Greater weight is given to the opinion of Dr. Hayes, the treating physician, with regard to the fall and fracture resulting in the acceleration of plaintiff's pre-existing bone tumor.
15. On February 25, 1999, plaintiff underwent another surgery performed by Drs. George Hoerr and Joel Morgan to remove all margins of tissue that may have been affected by the tumor; this surgery involved resection of the medial portion of the clavicle, a portion of the sternum and the underlying rib. The size of the area of plaintiff's chest, which had to be excised, was increased due to the effects of or the trauma from the fall, in that, the fracture allowed the tumor to escape and become more aggressive and to spread to tissues outside the confines of the cortex of the right clavicle and into the mediastinum. Dr. Hoerr released plaintiff on April 26, 1999, allowing him to return to work with no pulling of valves.
16. Thereafter, plaintiff returned to the care of Dr. Hayes. Dr. Hayes rated plaintiff with a thirty percent (30%) permanent partial impairment to his upper right extremity.
17. The bone tumor existed within plaintiff's right medial clavicle prior to his accidental injury of August 31, 1998. The tumor had weakened the cortex of the right clavicle making it more susceptible to the effects of the fall. The fall of August 31, 1998 and the resulting fracture accelerated plaintiff's pre-existing disease or bone tumor causing it to become more aggressive and to further spread extending beyond the confines of the bone.
18. Plaintiff returned to work for defendant-employer and while performing his job, aggravated the site of his right shoulder/clavicle injury while lifting a trashcan. Thereafter, Dr. Hayes restricted plaintiff to light duty with lifting twenty-five (25) pounds infrequently and ten (10) pounds occasionally, and no overhead work. Even with these restrictions plaintiff could not perform the duties he was assigned by defendant-employer and he was sent back to Prime Care on May 10, 1999. Plaintiff was further restricted to no sweeping, no lifting, no pushing or pulling, and no squatting or climbing. Defendant-employer was not able to provide plaintiff with a job within these additional restrictions. Plaintiff has not worked since May 9, 1999 and has not yet reached maximum medical improvement in that he suffered this additional aggravation and is in need of vocational rehabilitation.
19. Plaintiff has received short term and long-term disability benefits since he last worked. The employer did not contribute to the short-term disability plan for which plaintiff paid. However, defendant-employer has paid, without contribution from the plaintiff, for the long-term disability benefits that plaintiff will receive until his sixty-fifth birthday. Plaintiff received long-term disability benefits beginning in October 1999 in the amount of $166.29 per week.
20. Plaintiff was incapable of earning wages from February 2, 1999 until April 26, 1999. Thereafter, plaintiff again became incapable of earning wages beginning May 10, 1999 and continuing. Defendant has not provided plaintiff with any vocational rehabilitation.
20. Plaintiff's average weekly wage at the time of his injury by accident was $590.59 per week, yielding a compensation rate of $393.75 per week.
21. Defendant's defense of this matter is based upon reasonable grounds. Furthermore, defendant did prevail upon appeal with regard to enlarging its credit for long-term disability until plaintiff reaches sixty-five years of age.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer on August 31, 1998. Additionally, this injury augmented and accelerated the disease process of the pre-existing intraosseous chondrosarcoma that was within plaintiff's right clavicle allowing the tumor to become more aggressive and to spread into adjacent tissues. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury and its consequences, plaintiff is entitled to temporary total disability benefits at a weekly rate of $393.75 from February 2, 1999 until April 26, 1999 and again beginning May 10, 1999 and continuing until he returns to work at the same or greater wages or until further order of the Commission, subject to a reasonable attorney's fee and defendant's credit. N.C. Gen. Stat. §97-29.
3. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of his injury by accident so long as the treatment tends to effect a cure, give relief or lessen the period of plaintiff's disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
4. Plaintiff's average weekly wage at the time of his injury by accident was $590.59 per week, yielding a compensation rate of $393.75. N.C. Gen. Stat. § 97-2(5).
5. Defendant is not entitled to a credit for the short-term disability plan to which only plaintiff contributed. However, defendant is entitled to a credit for the benefits paid and to be paid in the future pursuant to the employer funded long-term disability plan from which plaintiff began receiving benefits in October 1999 and will continue to receive benefits until his sixty-fifth birthday in the amount of $166.29 per week. N.C. Gen. Stat. § 97-42.
6. Plaintiff is not entitled to attorney's fees as defendant did not engage in stubborn or unfounded litigiousness and as defendant was successful upon appeal with regard to entitlement to a credit. N.C. Gen. Stat. § 97-88.1; § 97-88.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to a reasonable attorney's fees and defendant's credit for long-term disability, defendant shall pay to plaintiff total disability compensation at a rate of $393.75 per week from February 2, 1999 until April 26, 1999 and again beginning May 10, 1999 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. All accrued benefits shall be paid in a lump sum.
2. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendant shall pay for all reasonably necessary medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury and its consequences when bills for same have been submitted in accordance with Commission procedure, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. An attorney's fee of twenty-five percent (25%) of the compensation due plaintiff herein is hereby awarded to plaintiff's counsel as reasonable attorney's fees, and shall be deducted from the compensation due plaintiff and paid to plaintiff's counsel directly by defendant. Thereafter, the attorney's fee shall be paid by deducting every fourth check to be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs due the Commission.
This the ___ day of August 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER